# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| BRENDA BEASOCK, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 6:12-1355 |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of | § | |
| Social Security, | § | |
| | § | |
| *Defendant.* | § | |

## REPORT AND RECOMMENDATION

Brenda Beasock ("Beasock") seeks review of an adverse decision on her applications for disability-based benefits under the Social Security Act.

## I.   Judicial Review

A reviewing court's limited role under 42 U.S.C. § 405(g) is to determine whether (a) the Commissioner applied proper legal standards and (b) the decision is supported by substantial evidence.  *See Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009), *cert. denied*, 559 U.S. 962 (2010); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also* 42 U.S.C. § 405(g). They cannot retry factual issues *de novo* or substitute their interpretations of administrative records for that of the Commissioner when substantial evidence supports the decision.  *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).  Neither can they overturn administrative rulings because they would have reached a different conclusion had the matter come before them in the first instance.  *See Campbell v. Astrue*, 465 Fed. App'x 4, 5 (2d Cir. 2012).

Further, Congress directs courts, when reviewing acts of administrative agencies, to take "due account" of "the rule of prejudicial error." 5 U.S.C. § 706; *see also* 28 U.S.C. § 2111 (directing that judgments given upon examination of records be "without regard to errors or defects which do not affect the substantial rights of the parties"); *see also* FED. R. CIV. P. 61 (stating that "the court must disregard all errors and defects that do not affect any party's substantial rights"). Thus, judicial review is quite deferential to the Commissioner's presumed expertise.

## II.  Background

Beasock seeks disability-based social security benefits due to neck and back pain, arthritis, depression, anxiety, numbness in legs and arms, emphysema, and herniated lumbar and cervical discs. (T. 157-63, 164-66, 194).[1] Administrative law judge, Zachary S. Weiss, ("ALJ Weiss") denied Beasock's applications. The Appeals Council declined review; Beasock then instituted this proceeding.

## III.  Commissioner's Decision

ALJ Weiss utilized a five-step sequential evaluation procedure prescribed by regulation and approved by courts as a fair and just way to determine disability applications in conformity with the Social Security Act.[2]  He determined at Step 1 that Beasock is not presently engaged in substantial

---

[1]    "T." followed by a number refers to the page of the administrative record. (Dkt. No. 9).

[2]    The procedure is "sequential" in the sense that when a decision can be reached at an early step, remaining steps are not considered. *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461 (1983)). A full discussion of the Commissioner's five-step process is contained in *Christiana v. Commissioner of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

gainful activity. At Step 2, he found that Beasock has discogenic lumbar disc disease and depression, conditions that, separately and collectively, are "severe impairments" in that they produce more than minimal functional limitations. (T. 29). At Step 3, ALJ Weiss found that Beasock's impairments, singly or in combination, are not so extreme in degree as to be presumptively disabling under the Commissioner's listings of presumptively disabling mental and physical impairments.[3]

Before proceeding to Steps 4 and 5, ALJ Weiss made a predicate finding of "residual functional capacity."[4] He found that Beasock's discogenic lumbar disc disease reduces her physical capacity such that she now can perform work-related activities only at the sedentary exertional level. (T. 30). Beasock's depression, however, does not limit or erode her mental capacity for work at any level.[5]

---

[3] The Commissioner publishes a series of listed impairments describing a variety of physical and mental conditions, indexed according to the body system affected. 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"). Listed impairments are presumptively disabling. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), (d).

[4] "Residual functional capacity" refers to what persons can still do in work settings despite physical and/or mental limitations caused by their impairments and related symptoms, such as pain. *See Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). Administrative law judges thus decide whether applicants, notwithstanding their impairments, have physical and mental abilities to perform activities generally required by competitive, remunerative work on a regular and continuing basis. Descriptions and observations of limitations from all sources, including claimants and lay persons are admissible and relevant on this issue. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

[5] With respect to *mental* capacity, ALJ Weiss concluded:

Although the claimant carries a diagnosis of depression, there is no indication that any psychiatric symptoms referable to said imp [*sic* for "impairment"] erode her occupational base.

(T. 30).

Based on this residual functional capacity assessment, ALJ Weiss found at Step 4 that Beasock lacks physical ability to perform her past relevant work processing checks and making pizzas. (T. 29, 34, 51-54). Beasock thus carried her burden to prove a *prima facie* case of disability.[6] The burden then shifted to the Commissioner to show at Step 5 that Beasock can still perform alternative and available work.[7]

At Step 5, ALJ Weiss consulted the Commissioner's Medical-Vocational Rules, commonly referred to as "the grids."[8] Based on Rule 201.24, ALJ Weiss determined that alternative jobs that Beasock can perform exist, and that a conclusion of "not disabled" is appropriate under the framework of that rule. (T. 34).

## IV. Points of Alleged Error

Sedentary work requires capacity to lift no more than 10 pounds at a time and occasionally to lift or carry articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.[9] When finding that Beasock has residual functional capacity for sedentary work, ALJ Weiss relied primarily on medical opinion expressed by an orthopedic

---

[6]     *See Mimms v. Heckler*, 750 F.2d 180, 185 (2d Cir. 1984).

[7]     *See Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009); *see also DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998); *Berry*, 675 F.2d at 467; 20 C.F.R. §§ 404.1566, 416.966.

[8]     *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2. The Medical-Vocational Guidelines are a matrix of general findings—established by rule—as to whether work exists in the national economy that a person can perform. They "take into account a claimant's residual functional capacity, as well as her age, education, and work experience." *Calabrese v. Astrue*, 358 Fed. App'x 274, 276 & n. 1 (2d Cir. 2009) (citing *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999)).

[9]     *See* 20 C.F.R. §§ 404.1567(a),416.967(a).

specialist, Dr. Donald Goldman, M.D., a consulting orthopedic physician who reviewed Beasock's complete medical records and answered post-hearing medical interrogatories regarding Beasock's physical impairments. (T. 580-88). Dr. Goldman opined that during the course of an eight-hour workday, Beasock can sit for six hours, stand/walk for four hours, and lift/carry ten pounds. (T. 583-84).

ALJ Weiss, however, *rejected* more restrictive medical opinions from two physicians who actually saw and treated Beasock. Dr. Sajid A. Khan, M.D., of Slocum-Dickson Medical Group, saw Beasock twice and administered two lumbar epidural steroid injections (7/20/09 and 8/3/09). (T. 468-69, 470-73). Dr. Danette Joseph, M.D., with Rome Medical Group, administered two cortisone injection treatments (9/2/09 and 9/12/09). (T. 479). Both physicians opined that during the course of an eight-hour workday Beasock can sit *less* than two hours; stand/walk *less* than two hours; and lift/carry *less* than ten pounds, occasionally and frequently. (T. 479, 482).[10]

ALJ Weiss also rejected portions of Beasock's subjective testimony which, had it been accepted, could lead to a conclusion that intensity, persistence and limiting effects of Beasock's pain would preclude performance of sedentary work.

Disagreeing with ALJ Weiss's credibility choices, Beasock's proffers two alleged errors:

1. The ALJ failed to properly assess Plaintiff's credibility; and,

---

[10] Dr. Joseph and Dr. Khan also completed documents entitled "Clinical Assessment of Pain," by circling three answers, opining that Beasock's pain is present to such an extent as to be distracting to adequate performance of daily activities of work; physical activity (*e.g.*, walking, standing, lifting, carrying, bending, *etc.*) greatly increases pain causing abandonment of tasks related to daily activities of work; and medication will severely impact Beasock's effectiveness in the workplace due to distraction, inattention, drowsiness, *etc.* (T. 480, 483).

2.  Defendant erred in failing to give controlling weight to the opinion of the treating provider, and in failing to properly analyze the medical evidence.

(Dkt. No. 15, pp. 1, 12-23).

Under this district's practice, the parties marshal their arguments through competing briefs.[11]  Beasock argues that ALJ Weiss disregarded legal principles embodied in the Commissioner's implementing regulations and interpretive rulings for evaluating subjective testimony and medical opinions of doctors.  The Commissioner argues that ALJ Weiss employed correct legal principles and that his factual findings are supported by substantial evidence.

## V.  Discussion and Analysis

Beasock's points challenge ALJ Weiss's weighting of the evidence. Such challenges typically are otiose, as nothing in social security jurisprudence is more firmly established than that it is the prerogative of the Commissioner, not reviewing courts, to resolve evidentiary conflicts and to appraise credibility of witnesses, including the claimant.  *Aponte v. Secretary, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984).  Administrative law judges (who usually have the only opportunity to observe witnesses' demeanor, candor, fairness, intelligence and manner of testifying) obviously are best-positioned to make accurate credibility determinations.[12]  Consequently, reviewing courts are loathe to second-guess and overturn credibility choices made by an administrative adjudicator.  *See Pietrunti v. Director, Office of Workers' Comp.*

---

[11]     *See* General Order #18 dated September 23, 2003 (superseding January 24, 2002 and September 19, 2001 general orders).  (Dkt. No. 3).

[12]     *See Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999) (stating that deference is given to administrative law judge's decision because he is in the best position to assess the claimant's credibility).

*Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997) ("Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are 'patently unreasonable.'"); *see also Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) ("Normally, [the court] give[s] an ALJ's credibility determinations special deference because the ALJ is in the best position to see and hear the witness.").

Reviewing courts, however, cannot abdicate their statutory duty to determine whether correct principles of law were applied and whether challenged decisions are supported by substantial evidence. Consequently, even credibility choices are examined in that limited context. Such review is appropriate here because Beasock argues that correct principles of law were not applied. In addition, Beasock proffers non-frivolous arguments that rejection of medical opinions from doctors Khan and Joseph was patently unreasonable.

## A.  *Rejection of Subjective Testimony*

Beasock testified that as a result of progressive neck and back pain she is unable to work. (T. 54, 64). She cannot walk on her heels and toes; perform a full squat or rise from a chair without difficulty. (T. 58). She takes medication daily, which reduces her pain from a 7 to a 5. (T. 62). She let her driver's license lapse due to problems with her neck. (T. 63). She has numbness and tingling in her hands that causes her to drop things. (T. 65). Beasock estimates that she can sit for 30 minutes; walk half a mile; and lift up to 8 pounds. (T. 65-66). Lifting anything over 8 pounds causes her pain. (T. 65). She only sleeps three or four hours a night. (T. 66). Her boyfriend and son help with laundry, and she can sweep or mop for only two minutes due to pain from twisting and turning. (T. 68-70).

ALJ Weiss found that Beasock's medically determinable impairments reasonably can be expected to cause symptoms described by Beasock. (T. 31).

He decided, nevertheless, that Beasock's statements concerning intensity, peristence and limiting effects of those symptoms "are not credible to the extent they are inconsistent with . . . [a] . . . residual functional assessment [for sedentary work]." (*Id.*). He amplified this finding by pointing to inconsistencies in Beasock's testimony, effectiveness of medications, Beasock's daily activities belying a claim that as a result of progressive neck and back pain she is unable to work, and a documentary record indicating spotty, routine and conservative medical treatment. (T. 31-34). ALJ Weiss also noted that at the time of Beasock's consultative examinations, she was, in fact, working.[13] (T. 33).

### 1.  Beasock's Challenge

Beasock cites factors to be taken into account when evaluating subjective testimony as articulated the Second Circuit. She also cites a governing regulation[14] and interpretive rulings[15] delineating a protocol for appropriate assessments of disability claimants' subjective testimony. Beasock asserts that this procedure was not observed by ALJ Weiss, and that he failed to reject her subjective testimony explicitly and with sufficient specificity to enable a court to determine whether there are legitimate reasons for his disbelief, and whether the credibility assessment is supported by substantial evidence.

### 2.  Governing Legal Principles

Pain is an important element in disability claims, and pain evidence must be thoroughly considered. *See Ber v. Celebrezze*, 332 F.2d 293, 298–99 (2d Cir.

---

[13]     Beasock worked after the alleged disability onset date, but the work activity did not rise to the level of substantial gainful activity. (T. 29).

[14]     *See* 20 C.F.R. §§ 404.1529(c), 416.929(c).

[15]     SSR 96-7p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186, at *3 (SSA July 2, 1996).

1964). Testimony from claimants, therefore, is not only relevant, but desirable. On the other hand, such testimony is subjective and may be colored by the claimant's interest in obtaining a favorable outcome.

An administrative law judge must, therefore, decide how much weight to give claimants' subjective self-evaluations. The Commissioner provides explicit guidance. First, a formally promulgated regulation requires consideration of seven objective factors that naturally support or impugn subjective testimony of disabling pain and other symptoms.[16] Second, an interpretive ruling directs administrative law judges to follow a two-step process to evaluate claimants' allegations of pain:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment(s) . . . that could reasonably be expected to produce the individual's pain or other symptoms . . . .

> Second, . . . the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities . . . .

---

[16]    An administrative law judge must evaluate a claimant's symptoms, including pain, based on  medical and other evidence, including he following factors:

(i)   claimant's daily activities;
(ii)  location, duration frequency, and intensity of claimant's pain or other symptoms;
(iii) precipitating and aggravating factors;
(iv)  type, dosage, effectiveness, and side effects of any medication claimant takes or has taken to alleviate her pain or other symptoms;
(v)   treatment, other than medication, claimant receives or has received for relief of her pain or other symptoms;
(vi)  measures claimant uses or has used to relieve pain or other symptoms; and
(vii) other factors concerning claimant's functional limitations and restrictions due to pain or other symptoms.

See 20 C.F.R. §§ 404.1529(c), 416.929(c).

SSR 96–7p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186, at *2 (SSA July 2, 1996). The Ruling further provides that "whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." *Id.*

Governing circuit law generally mirrors the Commissioner's Ruling. Thus, when an ALJ rejects a claimant's testimony of pain and limitations, he or she must provide explicit reasons for rejecting the testimony. *See Williams v. Bowen*, 859 F.2d 255, 260–61 (2d Cir. 1988); *Carroll v. Secretary of Health & Human Servs.*, 705 F.2d 638, 643 (2d Cir. 1983).[17]

3.  Application

There is no reversible legal error in ALJ Weiss's credibility assessment of Beasock's subjective testimony. First, citing 20 C.F.R. §§ 404.1529, 416.929, SSR 96-4p, and SSR 96-7p, ALJ Weiss acknowledged regulations and rulings applicable to consideration of subjective evidence. (T. 30). ALJ Weiss further mentioned the two-step process he was required to follow when considering Beasock's symptoms. (T. 30-31). These recitations confirm his awareness of and intent to apply correct legal principles.

---

[17]  When an administrative law judge neglects to employ proper legal standard, a court cannot subject his credibility determination to meaningful review. *See Meadors v. Astrue*, 370 Fed. App'x 179, 184–85 (2d Cir. 2010)

ALJ Weiss's decision reflects that he then considered objective factors identified in the Regulation to the extent there was evidence thereof (T. 30-31), engaged in the two-step process as required by the applicable Ruling, and articulated specific reasons for finding Beasock's subjective complaints not fully credible, all as required by circuit law. (T. 31). Thus, there is no obvious structural legal error in ALJ Weiss's approach to assessing credibility of Beasock's subjective testimony regarding persistence, intensity and limiting effects of her symptoms.

The remaining question is whether substantial evidence supports ALJ Weiss's articulated reasons. Beasock argues that none of her treating physicians suggests that she exaggerates her symptoms; her allegations of pain and fatigue generally have been consistent throughout the record; and those allegations are consistent with her medical diagnoses. Such evidence most assuredly could support a determination that Beasock's subjective testimony is credible.

ALJ Weiss, however, found other evidence more persuasive. As mentioned at the beginning of Section V.A., ALJ Weiss observed inconsistent subjective testimony on other relevant issues,[18] subjective acknowledgment of medication effectiveness,[19] daily activities not preclusive of exertional demands of sedentary

---

[18]     Beasock testified that as a result of progressive neck and back pain she is unable to work (T. 31), and that she was terminated from her job processing checks in 2007 due to increasing problems with her back and anxiety. (T. 31, 51-53). ALJ Weiss, however, observed in Beasock's disability report that Beasock stated that she resigned from this job to take care of her son and because she was depressed. (T. 31, 194).

Similarly, Beasock reported to Dr. Ganesh that she quit alcohol in 2007, and marijuana and cocaine in 2006. (T. 357). She testified at her hearing in July 2010, however, that she smoked marijuana up until three months prior to the hearing. (T. 62-63).

[19]     In September 2009, epidural steroid injections were administered, which Beasock was noted to be responding to. (T. 62-63).

work,[20] and a longitudinal record of spotty, routine and conservative medical treatment not suggestive of disability.[21]  Some administrative law judges might have considered these discrepancies insufficient to impugn significantly Beasock's credibility regarding intensity, persistence and limiting effects of pain. But, were the question of Beasock's credibility hypothetically submitted to a jury in a civil trial, the evidence relied on by ALJ Weiss would be sufficient to preclude a judgment as a matter of law in Beasock's favor.  As such, it passes the low threshold standard for substantial evidence.[22]

## B.    *Rejection of Favorable Medical Opinion*

Beasock advances a meatier challenge to ALJ Weiss's weighting of medical opinion evidence.   As described below, ALJ Weiss's decision reflects factual inaccuracies and superficially baffling logic when weighting that evidence.

### 1.    Medical Opinions Regarding Physical Capacity[23]

ALJ Weiss received and considered forensic medical opinions assessing Beasock's physical capacity for work activities from several physicians.  He also

---

[20]      Beasock reported to consultative internist, Dr. Kalyani Ganesh, M.D., that she cooks three times a week; cleans daily; does laundry twice a week; and mows the lawn. Her children help her with lifting and carrying, and she rests in between mowing to finish it.  (T. 356-57).

[21]      *See* discussion in Section V.*B.*

[22]      "Substantial" evidence need only be "enough to justify, if the trial were submitted to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *National Labor Relations Bd. v. Columbian Enameling & Stamping Co.,* 306 U.S. 262, 299-300 (1939)(*cited in* Harvey L. McCormick, Social Security Claims and Procedures § 672 (4th ed.1991)).

[23]      ALJ Weiss also received and considered medical opinions and functional assessments of Beasock's mental capacity. (T. 33-34, 379-83). That evidence is not summarized or otherwise discussed in this report because Beasock does not challenge ALJ Weiss's assessment of her mental residual functional capacity.

reviewed medical treatment records from physicians and other primary care providers associated with two practices, Slocum-Dickson Medical Group and Rome Medical Group. Forensic opinions of doctors Goldman, Khan and Joseph and their professional relationships with Beasock were reported at the outset of Section IV., *supra*. Dr. Goldman opined that Beasock has capacity for sedentary work, whereas doctors Khan and Joseph opined that Beasock lacks that capacity.

A consultative examining physician, Dr. Kalyani Ganesh, M.D., opined that Beasock has "[n]o limitation to sitting, standing, or walking. Mild limitation to lifting, carrying pushing, and pulling." (T. 359). A State Agency analyst, M. Parr, completed a Physical Residual Functional Capacity Form wherein he opined that in an eight-hour workday, Beasock can occasionally lift twenty pounds; frequently lift ten pounds; stand/walk for six hours; sit for six hours; and has unlimited capacity to push/pull. (T. 385). He further identified occasional postural limitations of kneeling and crawling. (T. 386).

### 2. ALJ's Weighting of Medical Opinions

Opinions most favorable to Beasock were expressed by Dr. Khan and Dr. Joseph. Had those assessments been accepted, ALJ Weiss could not have found Beasock to have residual functional capacity for sedentary work. Each physician actually saw Beasock and administered pain-management injections. ALJ Weiss, however, declined to give either physician "the status of a treating physician" because each saw Beasock on only two occasions. (T. 32). For that reason, and because he found that "the record supplies no clinical support" for their conclusions, ALJ Weiss afforded each opinion "little weight." (*Id*.).

Opinions least favorable to Beasock were expressed by consulting physicians, Dr. Goldman and Dr. Ganesh. Both of their assessments were

consistent with residual functional capacity for sedentary work. ALJ Weiss afforded "great weight" to opinions of reviewing orthopedic physician, Dr. Goldman, as he "has a specialty in the field in which the claimant's impairments lie and his conclusions are in accord with the medical evidence of record." (T. 33). ALJ Weiss did not quantify weight afforded to Dr. Ganesh's opinions, but stated that Dr. Ganesh "furnished a profile consistent with work as he failed to note limitations regarding sitting, and standing/walking and only noted mild limitations regarding lifting/carrying and pushing/pulling." (*Id.*).[24]

ALJ Weiss reviewed treatment records obtained from Slocum-Dickson Medical Group and Rome Medical Group. He concluded that Beasock's primary provider from the Rome Medical Group was Dr. Kathleen Gaibooshian, M.D. who provided "largely routine and symptomatic care centered over everyday medical complaints and orthopedic complaints." (T. 31). Physical examination revealed that Beasock had a good range of motion of the right knee with negative Lockman's and McMurray's testings. (*Id.*). Magnetic Resonance Imaging scanning revealed "protrusion at C5-6 without herniation." (*Id.*). And, relevant to Beasock's disability claim, Dr. Gaibooshian's treatment note reflects that "I told her there likely is a job she can perform, she just needs something without lifting or bending." (T. 249). ALJ Weiss concluded:

> Of note, at no time, does Dr. Gaibooshian *or any other physician affiliated with Rome Medical Group* note limitations preclusive of employment nor can any reasonably be determined."

(T. 32) (emphasis added).

---

[24]     ALJ Weiss did not discuss or weight the physical capacity findings of State Agency analyst, M. Parr. Given that he is a non-medical source pursuant to 20 C.F.R. §§ 404.1513(a), 416.913(a), ALJ Weiss did not err in this respect.

With respect to orthopedic care provided by Slocum-Dickson Medical Group, ALJ Weiss concluded that Beasock primarily was treated by orthopedist Dr. Rudolph Buckley, M.D., who recorded only minimal neurological symptoms warranting conservative treatment modalities, no motor or sensory deficits, no loss of cervical motion in protrusion or flexion, and only slightly limited range of spine motion that responded well to epidural steroid injections. (T. 32). ALJ Weiss concluded:

> Of note, at no time does Dr. Buckley *or any physician affiliated with the Slocum Dickson Medical Group* note limitations preclusive of employment nor can any reasonably be discerned.

(T. 32) (emphasis added).

### 3.    Challenge to ALJ's Medical Opinion Credibility Choices

Beasock's brief proffers a multi-pronged attack on ALJ Weiss's credibility choices regarding medical opinion.    First, Beasock observes (and the Commissioner's brief concedes) that ALJ Weiss was patently wrong when stating that no physician in either the Slocum-Dickson Medical Group or the Rome Medical Group noted limitations preclusive of employment.    Dr. Khan practices in the Slocum-Dickson Medical Group; Dr. Joseph practices in the Rome Medical Group; and both noted limitations preclusive of sedentary work.    (T. 479-483).

Next, Beasock argues that both Dr. Khan and Dr. Joseph were erroneously excluded for treating physician status because each saw Beasock in a professional patient relationship and administered treatment by injections. Beasock argues, in addition, that even if other evidence contradicts their opinions, as treating physicians their opinions were entitled to "greater weight than that of any other physician." (Dkt. Entry No. 15, pp. 17-23).

As for Dr. Goldman (whose opinions were afforded great weight), Beasock argues initially that it was error for ALJ Weiss to seek and consider post-hearing medical opinion evidence. (Dkt. Entry No. 15, pp. 16-17). Beasock further argues, in any event, that affording great weight to the opinions of a non-examining consulting physician while rejecting opinions of doctors Khan and Joseph, who had significantly more contact with Beasock, was error. (*Id*., p. 17).

Finally, Beasock's brief highlights pieces of objective medical evidence that Beasock contends bolster and support the more favorable opinions expressed by doctors Khan and Joseph. (*Id*., pp. 18-22).

4.    Governing Legal Principles

The Commissioner categorizes medical evidence by "sources" described as "treating," "acceptable" and "other." Administrative law judges are required to give controlling weight to opinions of treating sources[25] regarding the nature and severity of impairments, provided they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the case record.[26]

"Acceptable" medical sources are licensed physicians (medical or osteopathic doctors), psychologists, optometrists, podiatrists, and speech-language pathologists.[27] An acceptable medical source opinion or

---

[25]    *See* 20 C.F.R. §§ 404.1502, 416.902 ("Treating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.").

[26]    20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

[27]    20 C.F.R. §§ 404.1513(a), 416.913(a). "Acceptable medical source refers to one of the sources described in § 404.1513(a) who provides evidence about your impairments. It includes treating sources, nontreating sources, and nonexamining sources." 20 C.F.R. §§ 404.1502, 416.902.

diagnosis is necessary to establish existence of a medically determinable impairment.[28]

"Other" sources are ancillary providers such as nurse practitioners, physician assistants, licensed clinical social workers, and therapists.[29] Evidence from these sources "is evaluated on key issues such as impairment severity and functional effects."[30] "Other" source opinions, even when based on treatment and special knowledge of an individual, never enjoy controlling weight presumptions.[31] Nor can "other" source opinion be relied upon to establish existence of a medically determinable impairment.[32]

Evidence from *all three sources*, however, can be considered when determining *severity of impairments and how they affect individuals' ability to function*. And, in *each* instance (except when controlling weight is given to a treating source's opinion), the degree of weight to be given such evidence is determined by applying certain generic factors prescribed by regulation: (1) length of treatment relationship and frequency of examination; (2) nature and extent of treatment relationship; (3) evidence supporting the opinion; (4) how

---

[28] SSR 06-03p, Titles II and XVI: Considering Opinions and Other Evidence From Sources Who Are Not "Acceptable Medical Sources" in Disability Claims, 2006 WL 2329939, at *2 (SSA Aug. 9, 2006).

[29] 20 C.F.R. §§ 404.1513(d), 416.913(d); SSR 06-03p, 2006 WL 2329939, at *2.

[30] *Id.*, at *2-3.

[31] *Id.; see also* SSR 96-2p, Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions, 1996 WL 374188, at *1 (SSA July 2, 1996) (explaining controlling-weight factors).

[32] SSR 06-03p, 2006 WL 2329939, at *2.

consistent opinion is with record as a whole; (5) specialization in contrast to condition being treated; and (6) other significant factors.[33]

### 5. Application

Careless language by ALJ Weiss invited Beasock's first two arguments. Doctors Khan and Joseph clearly were "treating physicians" because each saw and treated Beasock on two occasions. Indeed, in the same sentence that ALJ Weiss declared that Dr. Joseph "should not be accorded the status of a treating physician," he recognized that Dr. Joseph "treated the claimant." (T. 32). Similarly, in the same sentence that ALJ Weiss declined to accord Dr. Khan status of a treating physician, he acknowledged that Dr. Khan "examined the claimant two times." (*Id.*). Clearly, what ALJ Weiss meant when stating that these physicians were not "accorded the status of a treating physician" was that he declined to give their opinions *controlling weight*.

Similarly, ALJ Weiss used patently incorrect language when stating that *no physician* affiliated with Rome Medical Group or with Slocum-Dickson Medical Group "noted limitations preclusive of employment." Dr. Khan practices in the Slocum-Dickson Medical Group; Dr. Joseph practices in the Rome Medical Group; and both noted limitations preclusive of even sedentary work. In context, however, ALJ Weiss indicated that he reviewed the longitudinal records of both provider groups and failed to discern any other information that reasonably might be viewed as findings of employment-preclusive limitations. What ALJ

---

[33] *See* 20 C.F.R. §§ 404.1527(c), 416.927(c)(Aug. 24. 2012) ("Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.").

*See also,* SSR 06-03p, 2006 WL 2329939, at *4 ("Although the factors in 20 C.F.R. 404.1527[c] and 416.927[c] explicitly apply only to the evaluation of medical opinions from 'acceptable medical sources,' these same factors can be applied to opinion evidence from 'other sources.'").

Weiss appears to have tried to convey, albeit awkwardly, was that no physicians in these medical groups *other than* doctors Khan and Joseph found such limitations.

ALJ Weiss employed embarrassingly inaccurate verbiage. Courts conducting judicial review in social security cases, however, do not require perfect opinions. Accidental and non-substantive gaffes, such as those just described, are harmless when viewed in proper context. Neither warrants reversal of the administrative decision.

Of greater interest are Beasock's challenges to ALJ Weiss's election to afford great weight to Dr. Goldman's opinions. If opinions of doctors Khan and Joseph were entitled to "little weight" because each treated Beasock minimally, it seems facially arbitrary and illogical to afford "great weight" to opinions of Dr. Goldman who never saw, examined or treated Beasock even once.

When scrutinized under governing legal standards, however, ALJ Weiss's credibility choices regarding medical source opinions were not as nitwitted as they first appear. First, Beasock's argument that ALJ Weiss was barred from even obtaining and entertaining evidence from Dr. Goldman is unpersuasive. An administrative law judge has discretion as to when it is necessary to call a medical expert on the nature and severity of a claimant's impairments. *See* 20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii). As such, nothing precluded ALJ Weiss from calling upon medical expert testimony. Additionally, opinions of non-examining experts are admissible into evidence. *See Richardson v. Perales*, 402 U.S. 389, 408 (1971). And, when supported by substantial evidence in the

record, non-examining opinion may even override opinions of treating physicians. *See Netter v. Astrue*, 272 Fed. App'x 54, 55-56 (2d Cir. 2008).[34]

Second, ALJ Weiss did not exceed bounds of his discretion when declining to give controlling weight to opinions of doctors Khan and Joseph. A majority of relevant evaluative factors in the governing regulation would counsel against affording such weight. The length of the treatment relationship, frequency of examination, nature and extent of treatment relationship (Factors 1 and 2), all were brief and narrow in scope insofar as doctors Khan and Joseph were concerned. Neither supplied evidence supporting the opinions offered; their opinions consist mainly of check-the-box responses on a medical assessment form, and otherwise terse and unamplified answers. (Factor 3). Both offered opinions inconsistent with the longitudinal record as a whole. (Factor 4). Finally treatment notes made during Beasock's limited visits are inconsistent in some respects with limitations set forth in their medical assessments.[35]

---

[34] Beasock offers an alternative, makeweight argument that if ALJ Weiss thought the evidentiary record was incomplete and needed supplementation, he should have recontacted the consultative examining physician, Dr. Ganesh. While that surely was an option, there is no requirement that administrative law judges recontact consultative examiners; regulations address recontacting a claimant's treating sources. *See* 20 C.F.R. §§ 404.1512(e), 416.912(e). In any event, ALJ Weiss's election to obtain expert orthopedic opinion rather than opinion from an internal medical specialist was reasonable, considering the orthopedic nature of Beasock's impairment.

[35] Dr. Khan noted that Beasock reported that she was independent with her activities of daily living and could comfortably lift ten pounds. (T. 462). Dr. Khan observed Beasock as having a normal gait as well as normal motor and sensory examinations. (T. 463). Her straight leg raising was negative bilaterally, and range of motion was only slightly limited. (*Id.*). He made similar benign observations when he saw her in August 2009. (T. 475).

Third, ALJ Weiss did not exceed bounds of his discretion when electing to give great weight to opinions of reviewing physician, Dr. Goldman.[36]  Those opinions were consistent with the record as a whole, especially treatment records of primary providers, doctors Gaibooshian and Buckley.  (Factor 4).  Dr. Goldman was a specialist with respect to the orthopedic impairments under consideration.  (Factor 5).  And, of considerable import, Dr. Goldman's expert opinions were informed after reviewing Beasock's complete medical records. (Factor 6).

In sum, ALJ Weiss's credibility choices regarding medical source opinions were quirky (as described in opening paragraphs of this section), but not reversible for failure to apply correct principles of law.

## VI.  Recommendation

Beasock's request to remand this action should be DENIED. The Commissioner's decision should be AFFIRMED.

## VII.  Objections

Parties have fourteen (14) days to file specific, written objections to the Report and Recommendation.  Such objections shall be filed with the Clerk of the Court.

---

[36]      Beasock's argument, (Dkt. Entry No. 15, p. 16), that treating physician opinion, even when contradicted by other evidence, always is entitled to greater weight than that of any other physician is rejected.  In support of that assertion, Beasock cites *Green-Younger v. Barnhart*, 335 F.3d 99 (2d Cir. 1999).  Careful reading of that decision fails to disclose any language supporting Beasock's argument.

**FAILURE TO OBJECT TO THE REPORT, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

*Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Graham v. City of New York*, 443 Fed. App'x 657, 658 (2d Cir. 2011); *FDIC v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995); *see also* 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Signed on the ___13___ day of ___December___ 2013.

Earl S. Hines
United States Magistrate Judge